# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| UNTIED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:18-cv-2288-DCN |
| vs. ) | |
| ) | **ORDER** |
| PAUL EDWARD MASHNI; PEM ) | |
| RESIDENTIAL, LLC; PEM REAL ESTATE ) | |
| GROUP, LLC; FINISH LINE FOUNDATION ) | |
| II, INC.; KIAWAH RIVER FARMS, LLC; ) | |
| KIAWAH RIVER EXCAVATING & ) | |
| EARTHWORKS, LLC; KRF XSL, LLC; SC ) | |
| INVESTMENT HOLDINGS, LLC; and SC ) | |
| INVESTMENT HOLDINS, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The following matter is before the court on the government's motion to compel, ECF No. 61, and defendants Paul Edward Mashni; PEM Residential, LLC; PEM Real Estate Group, LLC; Finish Line Foundation II, Inc.; Kiawah River Farms, LLC; Kiawah River Excavating & Earthworks, LLC; KRF XSL, LLC; SC Investment Holdings, LLC; and SC Investment Holdins, LLC's (collectively "defendants") motion to bifurcate, ECF No. 64.  For the reasons set forth below, the court grants the motion to compel and denies the motion to bifurcate.

## I.  BACKGROUND

The government brings this civil enforcement action pursuant to the Clean Water Act ("CWA") to obtain injunctive relief and civil penalties against defendants.  Mashni is developing two residential communities on John's Island, South Carolina, near the Stono and Kiawah Rivers.  The remaining defendants are entities involved in the development

1

projects, each of which the government claims is owned and operated by Mashni. The government alleges that in preparing the sites for construction, defendants violated the CWA by discharging pollutants into the Kiawah and Stono watersheds and redistributing soil to fill government-protected waters. On August 17, 2018, the government filed its complaint against defendants, alleging CWA violations with respect to each residential development. ECF No. 1, Compl. On September 23, 2019, the court dismissed the government's claim with respect to the Kiawah River residential development. ECF No. 50. Over the past year, the government and defendants have jointly filed seven motions to stay the matter while engaging in efforts to resolve the dispute without further litigation. See ECF Nos. 67, 70, 72, 76, 84, 87, 89. Eventually, negotiation efforts broke down, and the parties submitted a consent amended scheduling order under which the case is now set to proceed.

Back in October 2019, prior to the parties' failed settlement efforts, the government filed a motion to compel, seeking production of defendants' financial records. ECF No. 61. After the parties exhausted attempts at settlement negotiation and filed an amended scheduling order, on October 29, 2020, defendants responded to the motion. ECF No. 111. On November 5, 2020, the government replied. ECF No. 115. Also pending before the court is defendants' motion to bifurcate, which defendants filed on November 6, 2019. ECF No. 64. After the filing of the amended scheduling order, the government responded on November 5, 2020. ECF No. 114. And on November 12, 2020, defendants replied. ECF No. 121. The court held a hearing on the motions on November 19, 2020. As such, the motions are now ripe for the court's review.

## II. DISCUSSION

### A. Motion to Bifurcate

Because the court's resolution of the government's motion to compel depends upon the outcome of the motion to bifurcate, the court discusses the motion to bifurcate first. Defendants argue that the court should bifurcate this action into two distinct phases. In the first, a jury will determine whether defendants violated the Clean Water Act. In the second, if necessary, the court will determine the appropriate penalties for the violations. Defendants contends that discovery with respect to the penalty phase should not commence until the liability phase is concluded. The government argues that bifurcation is inappropriate. For the reasons discussed below, the court agrees with the government and denies the motion.

To determine whether bifurcation is appropriate, a brief review of the Clean Water Act is necessary. A defendant violates the Clean Water Act where (1) his or her unauthorized activities resulted in (2) a discharge (3) of a pollutant (4) from a point source (5) into the "waters of the United States." 33 U.S.C. §§ 1311(a), 1344. The government must prove each element. For this "liability phase" of trial, the defendant is entitled to a jury, if requested. Tull v. United States, 481 U.S. 412, 423–25 (1987). If a defendant's liability is established, the Clean Water Act authorizes the court to impose injunctions and civil penalties of up to $55,800 per day for each violation. 33 U.S.C. § 1319(b), (d); 40 C.F.R. § 19.4. In determining the appropriate amount of civil penalties, the court considers:

> the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

33 U.S.C. § 1319(d).

Pursuant to Rule 42 of the Federal Rules of Civil Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." "[T]he granting of separate trials is within the sound discretion of the trial judge." Bowie v. Sorrell, 209 F.2d 49, 51 (4th Cir. 1953). "Notwithstanding the broad discretion conferred by Rule 42(b), the party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." Sentry Select Ins. Co. v. Guess Farm Equip., Inc., 2013 WL 5797742, at *4 (D.S.C. Oct. 25, 2013). Courts also consider (4) the separability of the issues on which bifurcation is sought, (5) whether the claims are equitable or legal in nature, (6) the posture of discovery, and (7) the extent to which evidence would overlap. See Dodgeland of Columbia, Inc. v. Federated Mut. Ins. Co., 2009 WL 10710815, at *1 (D.S.C. July 15, 2009).

"[T]he bifurcation of issues and the separate trial of them is not the usual course of events," and "[m]erely presenting some proof which supports bifurcation is not enough." Dodgeland, 2009 WL 10710815, at *1 (citing 9 Charles Alan Wright, et al., Federal Practice and Procedure § 2381, 2387-92, at 474 (1990) and Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F.Supp. 1429, 1433-34 (D. Del.

4

1989)).  "Nothing else appearing, a single trial will be more expedient and efficient." Id. (citing Industrias Metalicas Marva, Inc. v. Lausell, 172 F.R.D. 1, 2 (D.P.R. 1997)).

  As an initial matter, the court points out the limited practical effect of a potential bifurcation order.  Given the nature of this Clean Water Act action, a trial in this case necessarily must take place in two separate phases—under the first, the jury will determine liability and under the second, if necessary, the court will impose penalties.  In this way, the trial is already bifurcated between a liability phase and a penalty phase.  In other words, this case is already bifurcated in the traditional sense.  The only effect of a potential order to bifurcate would be to put off discovery relevant to the penalty phase of trial until after a jury determines liability in the liability phase.  As such, the potential prejudice that might result if the court declines bifurcation is limited.  Either way, the jury will hear only evidence that is relevant to the question of liability, and the court will conduct the penalty phase of the trial only if the jury finds that defendants are liable in the liability phase.

  Effectively, defendants' request is one to bifurcate discovery.  The only evidence that is exclusively relevant to the penalty phase of the trial is evidence of defendants' financial condition, meaning that the sole practical consequence of bifurcation in this case would be that defendants need not respond to discovery requests about their financial condition until after a jury determines defendants' liability.  Put another way, the sole effect of bifurcation would be defendants' ability to avoid certain discovery requests.  Courts have found that bifurcation is an inappropriate vehicle to avoid discovery requests.  See Creative Home Designs, Inc. v. Fred Francis Builders, L.P., 2006 WL 2469379, at *2 (M.D. Tenn. Aug. 25, 2006) (denying a motion to bifurcate

where "Defendants [we]re seeking to avoid responding to Plaintiff's discovery requests."). The only possible prejudice that could result from the court's refusal to bifurcate is that that defendants will be compelled to produce financial records that may not be used in the event that a jury determines that defendants are not liable. Such a concern is, at most, minimally prejudicial and thus weighs heavily against bifurcation.

Other relevant factors also weigh against bifurcation, including the central concerns of convenience and efficiency. As the government explains, "to determine the amount of civil penalties and the appropriate injunctive relief, the Court will need to consider some of the same evidence and hear from many of the same witnesses as the jury will consider in determining liability." ECF No. 114 at 5. For example,

> evidence from Defendants' past and current employees—to include their documents and communications—is expected to prove that Defendants are the ones who caused the discharge of the pollutants, and those same witnesses are expected to provide evidence in support of the penalty factors that will counter claims by Defendants of good-faith efforts they may claim to have taken to comply with the applicable requirements. Further, the expert reports by Dr. Darden and Dr. Dennis (and any future reports and depositions by these experts) will be used as evidence to establish liability elements—(a) the discharge (b) of any pollutant (c) from any point source (d) into waters of the United States—and penalty factors, like the seriousness of the violation.

Id. If the court bifurcates the liability and penalty phases, the government would have to conduct separate depositions for, and serve separate discovery requests on, the same witnesses, likely months apart from one another. Obviously, convenience favors gathering all the relevant evidence at once. Moreover, it will be much more efficient for the witnesses to testify at a single trial rather than at separate trials, distant in time. See Dodgeland, 2009 WL 10710815, at *2 ("Even if the issues are separable for purposes of the Seventh Amendment, a court will likely decline to bifurcate if there will be a

significant overlap of evidence at the two trials which would make separation inefficient and inexpedient.").

Defendants' analysis of the efficiency factor lacks logical support. Defendants claim that bifurcation will be more convenient because the parties dispute a preliminary issue of liability—the government's jurisdiction over the waters into which defendants allegedly made discharges. If this issue is decided in favor of defendants, they conclude, "the extent of proceedings and the scope of any remedy" will be "severely limit[ed]." ECF No. 121 at 5. In other words, defendants argue that a finding during the liability phase of trial could eliminate the need for the court to undergo the penalty phase. Of course, this is true whether or not the court grants the motion to bifurcate. In the event that the jury finds defendants are not liable, the court will not conduct the penalty phase of the trial. As discussed above, the only practical effect of bifurcation would be to delay defendants' disclosure of their financial condition until after their liability is determined. While such a result may be slightly more convenient for defendants, it is considerably less convenient for the government and the witnesses involved and clearly a less efficient use of judicial resources. As such, bifurcation is in no way more efficient than a single trial.

Moreover, defendants have not shown that they will be unduly prejudiced absent bifurcation. There is no dispute that the financial condition of defendants is relevant to the court's potential assessment of civil penalties. Defendants argue that there are significant jurisdictional issues that the government must overcome to prove that the defendants are liable. As such, defendants contend that they would be prejudiced by engaging in the "herculean effort" of producing discovery relevant to the penalty phase

prior to a determination of liability. ECF No. 64 at 4. The court fails to see how producing relevant discovery is unduly prejudicial. To be sure, defendants might produce records that go unused if the jury finds that they are not liable under the Clean Water Act. But producing financial records that may or may not be used at trial is not unfairly prejudicial. And despite defendants' contention, the court is unconvinced that producing basic financial records for seven companies and one individual will necessitate a "herculean effort." Courts regularly compel Clean Water Act defendants to produce evidence of their financial condition. See, e.g., Baykeeper v. Kramer Metals, Inc., 2009 WL 10671577, at *4 (C.D. Cal. Feb. 27, 2009) ("[D]efendant's financial information is clearly relevant to plaintiff's claims . . . under the Clean Water Act."). Defendants have presented no argument or precedent that convinces the court that bifurcation is appropriate here.[1]

Additionally, defendants have previously indicated to the court that bifurcated discovery is unnecessary in this case. In the parties' joint Rule 26(f) proposed discovery plan, defendants and the government were asked to address "whether discovery should be conducted in phases or be limited to or focused on particular issues." ECF No. 34 ¶ 2. The parties answered as follows: "Discovery is needed as to the issues underlying Plaintiff's claims and the facts and circumstances surrounding allegations in the

---

[1] Defendants support their argument with citation to two bifurcated Clean Water Act cases. In one, the Ninth Circuit merely notes as part of the case's procedural history that the district court granted a motion to bifurcate but does not otherwise consider the issue. Russian River Watershed Prot. Comm. v. City of Santa Rosa, 142 F.3d 1136, 1140 (9th Cir. 1998). In the other, a district court granted a motion to bifurcate in a single sentence without engaging in any analysis. United States v. Sargent Cty. Water Res. Dist., 876 F. Supp. 1081, 1089 (D.N.D. 1992). These cases fail to convince the court that bifurcation is appropriate here.

Compliant. <u>Discovery need not be conducted in phases, or be limited to or focused upon particular issues</u>." Id. (emphasis added). Defendants' previous representation to the court that discovery need not be bifurcated weighs heavily against bifurcation at this stage. For all these reasons, the court denies the motion to bifurcate.

### B. Motion to Compel

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n. 16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be

9

overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Service, 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

In its motion to compel, the government asks the court to compel defendants' compliance with several requests for production of defendants' financial records. There is no dispute that the financial condition of defendants is relevant to the penalty phase of a potential trial. See 33 U.S.C. § 1319(d) (requiring the court to consider "the economic benefit (if any) resulting from the violation" and "the economic impact of the penalty on the violator"); see also United States v. Smithfield Foods, Inc., 972 F. Supp. 338, 353 (E.D. Va. 1997) ("[T]he court is required to consider the economic impact of the penalty on the violator. In doing so, the court may consider appropriate economic indicators of a company's financial status."). Indeed, at the hearing on the motions, counsel for defendants conceded that defendants production of financial records was a matter of "when not if." Defendants' grounds for non-compliance with the government's requests for production are rooted in the motion to bifurcate. In other words, defendants wish to put off producing their financial records until after the liability phase of trial, at which point such production might be unnecessary. For the reasons discussed above, the court declines to bifurcate. As such, defendants are without a basis to refuse to respond to the government's discovery requests.[2] The court therefore grants the motion to compel and

---

[2] At the hearing on the motions, counsel for defendants argued that evidence of defendants' financial condition might be made irrelevant by a stipulation that defendants can afford to pay court-imposed penalties. Not so. The purpose of the court's consideration of a Clean Water Act violator's financial condition is to assess the punitive effect that imposed penalties will have, not merely to ensure that a violator can afford to pay. See 33 U.S.C. § 1319(d) (requiring that the court assess "the economic impact of the penalty on the violator").

orders defendants to produce the financial documents the government seeks in its requests for production.

### III.  CONCLUSION

For the foregoing reasons the court **GRANTS** the motion to compel and **DENIES** the motion to bifurcate.

**AND IT IS SO ORDERED.**

 

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 23, 2020**
**Charleston, South Carolina**

11