IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNTIED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PAUL EDWARD MASHNI; PEM ) | No. 2:18-cv-2288-DCN |
| RESIDENTIAL, LLC; PEM REAL ESTATE ) | |
| GROUP, LLC; FINISH LINE FOUNDATION ) | **ORDER** |
| II, INC.; KIAWAH RIVER FARMS, LLC; ) | |
| KIAWAH RIVER EXCAVATING & ) | |
| EARTHWORKS, LLC; KRF XSL, LLC; SC ) | |
| INVESTMENT HOLDINGS, LLC; and SC ) | |
| INVESTMENT HOLDINS, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The following matter is before the court on defendant Paul Edward Mashni ("Mashni"); PEM Residential, LLC; PEM Real Estate Group, LLC; Finish Line Foundation II, Inc.; Kiawah River Farms, LLC; Kiawah River Excavating & Earthworks, LLC; KRF XSL, LLC; SC Investment Holdings, LLC; and SC Investment Holdins, LLC's (collectively, the "corporate defendants") (together with Mashni, "defendants") motion for certification of interlocutory appeal, ECF No. 184, and motion to clarify scope of Rule 26(a)(3) disclosures, ECF No. 195. For the reasons set forth below, the court denies the motion for certification of interlocutory appeal and finds the motion to clarify moot.

## I. BACKGROUND

The government brings this civil enforcement action pursuant to the Clean Water Act (the "CWA") to obtain injunctive relief and impose civil penalties against Mashni

1

and the corporate defendants.  Mashni owns two multi-parcel sites on John's Island, South Carolina, near the Stono and Kiawah Rivers.  The complaint refers to these sites as the "Legareville Site" and the "Edenborough Site."  ECF No. 1, Compl.  According to the government, the corporate defendants are entities involved in the development projects, each of which is owned and operated by Mashni.  The government alleges that in preparing the sites for construction, defendants violated the CWA by discharging pollutants into the Kiawah and Stono watersheds and redistributing soil to fill federally protected waters.  According to the complaint, defendants' unlawful conduct began "in or about January 2017," id. ¶ 121, and continued up until the filing of the complaint, id. ¶ 37.

On August 17, 2018, the government filed this enforcement action against defendants, alleging CWA violations with respect to both the Legareville and Edenborough Sites.  Id.  On September 23, 2019, the government voluntarily dismissed its claim with respect to the Edenborough Site, leaving only the Legareville Site at issue. ECF No. 50.  The rocky and winding road of this litigation has been detailed in the court's past orders, and in short, the government and defendants have engaged in numerous attempts to resolve the dispute without proceeding to trial—all to no avail. Most recently, on July 1, 2021, the court entered an order denying defendants' motion for partial summary judgment and motion for judgment on the pleadings (the "July Order"). ECF No. 183.

On July 19, 2021, defendants filed a motion for certification of interlocutory appeal, seeking the court's leave to appeal the July Order's findings on a relevant and disputed issue of law.  ECF No. 184.  The government responded in opposition on

August 2, 2021, ECF No. 187, and defendants replied on August 9, 2021, ECF No. 191. On October 20, 2021, defendants also filed a motion styled as a motion for extension of time to extend deadlines and clarify scope or Rule 26(a)(3) disclosures. ECF No. 195. The government responded in opposition on October 21, 2021, ECF No. 196, and defendants replied on October 22, 2021, ECF No. 197. As such, these motions have been fully briefed and are ripe for the court's review.

## II.  STANDARD

"[28 U.S.C. §] 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." Lynn v. Monarch Recovery Mgmt., Inc., 953 F. Supp. 2d 612, 623 (D. Md. 2013) (quoting In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982)). Pursuant to 28 U.S.C. § 1292(b), an interlocutory appeal may be sought for an order that is not otherwise appealable when the district court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." As such, a district court may certify an order for interlocutory appeal when: "1) such order involves a controlling question of law, 2) as to which there is substantial ground for difference of opinion, and 3) an immediate appeal from that order may materially advance the ultimate termination of the litigation." Mun. Ass'n of S.C. v. Serv. Ins. Co., Inc., 2011 WL 13253448, at *3 (D.S.C. Sept. 21, 2011) (internal quotations and citation omitted). All three requirements must be met. Id.

### III.   DISCUSSION

**A.  Motion for Certification of Interlocutory Appeal**

Before analyzing the parties' competing interpretations on the proposed issue for certification, the court must, once again, dive into the murky depths surrounding the phrase "waters of the United States."  Mercifully, the court will not elaborate on the full history of the regulatory definition as a detailed discussion can be found in the court's previous order.  See United States v. Mashni, 2021 WL 2719247 (D.S.C. July 1, 2021).  However, the court will discuss key developments in the history since the July Order was issued.

Congress drafted the CWA to apply to "navigable waters."  See 33 U.S.C. §§ 1311(a); 1342(b).  The CWA defines "navigable waters" as "waters of the United States."  33 U.S.C. § 1362(7).  Therefore, the statutory term "waters of the United States" (or "WOTUS") delineates the geographic reach of the substantive provisions of the CWA.  Nat'l Ass'n of Mfrs. v. Dep't of Def., 138 S. Ct. 617, 625 (2018).  The parties here dispute the scope and definition of "waters of the United States."  The government argues that the phrase is subject to the definition proposed by the Army Corps of Engineers (the "Corps").  In 1986, the Corps promulgated regulations interpreting the phrase "waters of the United States" as including: traditional navigable waters, interstate waters, and territorial seas; impoundments of jurisdictional waters; intrastate waters and wetlands, the "use, degradation, or destruction of which could affect interstate or foreign commerce;" tributaries of jurisdictional waters; and wetlands adjacent to jurisdictional waters that are not themselves jurisdictional.  33 C.F.R. § 328.3(a) (2020); Final Rule for Regulatory Programs of the Corps of Engineers, 51 Fed. Reg 41,206 (Nov. 13, 1986)

(hereinafter, the "1986 Regulations"). With the exception of a 2015 regulation regime that was subsequently repealed in 2019, the 1986 Regulations—also known as the pre-2015 regulations—provided the definitive operative definition until 2020. See Definition of "Waters of the United States"—Recodification of Pre-Existing Rules," 84 Fed. Reg. 56,626 (Oct. 22, 2019) (hereinafter, the "2019 Repeal Rule"). In April 2020, the Corps and the Environmental Protection Agency ("EPA," together with the Corps, the "agencies") promulgated the "Navigable Waters Protection Rule" (the "NWPR"), which provided a new regulatory definition for "waters of the United States." The Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020). The NWPR redefined WOTUS to include only "traditional navigable waters; perennial and intermittent tributaries that contribute surface water flow to such waters; certain lakes, ponds, and impoundments of jurisdictional waters; and wetlands adjacent to other jurisdictional waters." Id. Thus, the NWPR provided a narrower definition of "waters of the United States" than the definition in the 1986 Regulations, which included wetlands, the "use, degradation, or destruction of which could affect interstate or foreign commerce." 51 Fed. Reg 41,206. The NWPR went into effect on June 22, 2020. See 85 Fed. Reg. 22,250.

Following this court's July Order, a group of defendants that included the EPA and the Corps filed a motion for voluntary remand of the NWPR without vacatur in an action challenging both the 2019 Repeal Rule and the NWPR. Pascua Yaqui Tribe v. Env't Prot. Agency, 2021 WL 3855977, at *1 (D. Ariz. Aug. 30, 2021). As the District of Arizona explained, President Biden issued Executive Order 13,990, directing the agencies "to immediately review and, as appropriate and consistent with applicable law,

take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives." Id. at *3 (citing 86 Fed. Reg. 7,037 (Jan. 20, 2021)). Consistent with the executive order, the agencies "provided notice of their intent to restore the pre-2015 regulatory definition of 'waters of the United States' while working to develop a new regulatory definition." Id. The court ultimately granted defendants' motion <u>with</u> vacatur due, in part, to "the likelihood that the Agencies will alter the NWPR's definition of 'waters of the United States.'" Id. at *5. Therefore, it vacated and remanded the NWPR for reconsideration. Id. at *6. On December 7, 2021, the agencies announced a proposed rule to revise the definition of "waters of the United States." Revised Definition of "Waters of the United States," 86 Fed. Reg. 69,372 (Dec. 7, 2021). The public comment period for the proposed rule will close on February 7, 2022. Id.

In the July Order, the issue squarely before this court was whether the government's suit should be governed by the 1986 definition of WOTUS—the law at the time of the government's claim—or whether the NWPR's definition—which was still in effect at the time of the July Order—should be retroactively applied.[1]

Defendants argue that the court should certify an interlocutory appeal of the July Order because the order meets each prong for certification. Specifically, defendants argue that the July Order (1) involves a controlling question of law, (2) on which

---

[1] The agencies similarly moved for voluntary remand of the NWPR in a case before the District of South Carolina. S.C. Coastal Conservation League v. Regan, No. 2:20-cv-01687-BHH (D.S.C. 2021) (ECF No. 140). On July 14, 2021, Judge Hendricks granted the motion to remand <u>without</u> vacatur. Id. at ECF No. 147. Since the rule was not vacated in South Carolina, defendants argue that the NWPR definition of WOTUS would still apply in this case.

substantial ground for difference of opinion exists, and (3) an immediate appeal of the July Order would materially advance the ultimate termination of the litigation.  The government disagrees, arguing that the July Order does not involve a controlling question of law due to the lack of finality weighing on the definition and that defendants' disagreement with the Order is not a substantial ground for difference of opinion.  The court addresses each prong in turn.

1. **Controlling Question of Law**

"A controlling question of law is a narrow question of pure law whose resolution would be completely dispositive of the litigation, either as a legal or practical matter." In re TD Bank, N.A. Debit Card Overdraft Fee Litig., 2016 WL 7320864, at *5 (D.S.C. July 18, 2016) (quoting Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc., 2013 WL 5946109, at *3 (D.S.C. Nov. 6, 2013)).  However, "[e]ven where the question presented is a legal one, if resolution of that issue is rooted in the facts of a particular case, the question is not proper for interlocutory review."  Randolph v. ADT Sec. Servs., Inc., 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012).  "As a result, § 1292(b) is not 'appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts.'"  Michelin, 2013 WL 5946109, at *3 (quoting City of Charleston v. Hotels.com, LP, 586 F. Supp. 2d 538, 548 (D.S.C. 2008)).

The government concedes "that the question of which definition of 'waters of the United States' applies is a pure question of law."  ECF No. 187 at 5.  Under this first prong, the government instead argues that "the resolution is not completely dispositive of the litigation."  Id.  Defendants counter that there is no concrete rule stating that a question must be completely dispositive to be controlling.  In support of that view,

defendants argue that every instance in which a court within this district has applied the "completely dispositive" language has been in dicta, and the language originates from an unpublished Fourth Circuit case that merely found that "the kind of question best adapted to discretionary interlocutory review" is one completely dispositive of the litigation. See Fannin v. CSX Transp., Inc., 873 F.2d 1438 (4th Cir. 1989) (unpublished table opinion). One of the many blessings of a lifetime appointment is that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d] (3d ed. 2011)). But it is well-established that district courts have "first line discretion to allow interlocutory appeals." See Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 47 (1995); see also Marsh v. Grade S., Inc., 2008 WL 11349866, at *1 (D.S.C. May 28, 2008) ("The decision of a district court on whether to grant an interlocutory appeal is discretionary in nature." (citing Swint, 514 U.S. at 47)). Accordingly, it would be within the court's discretion to consider whether a case is capable of resolution as a factor for whether there is a controlling question of law. As defendants tacitly acknowledge, there is no authority contra to the Fourth Circuit's observation that "'completely dispositive' issues may be the 'best adapted' for interlocutory appeal."[2]

---

[2] Consideration of the "dispositive" factor is further warranted based on recognition from other judges that this factor may apply toward the third factor as well—whether an immediate appeal would materially advance the ultimate termination of the litigation. See Weichert Real Est. Affiliates, Inc. v. Dean Kelby Realty, LLC, 2010 WL 11530906, at *2 (D.S.C. Dec. 10, 2010) ("[T]he court is convinced that an interlocutory appeal will not materially advance the ultimate termination of the litigation. Assuming the Fourth Circuit accepted the interlocutory appeal, and ruled in Plaintiff's favor, the case would still return to this Court for trial because, as noted above, liability has not yet been established."); Hotels.com, 586 F. Supp. 2d at 548 ("Since this litigation would

ECF No. 191 at 4 (citing Fannin, 873 F.2d 1438). On this question, the court is unconvinced that resolution of the applicable definition would be completely dispositive. The government has indicated that it alleges a violation of the CWA occurred at the Legareville Site regardless of which WOTUS definition applies. Although the court previously had occasion to observe that the issue of retroactivity was "legal[ly] consequen[tial]," ECF No. 183 at 16, it did not—and cannot—determine whether applying the NWPR definition would extinguish the government's claims. Defendants further argue that if the court were to apply the "completely dispositive" view of the test, the government has failed to offer any expert testimony supporting jurisdiction under the NWPR definition. As defendants predict, however, the most likely recourse in such a scenario would be to reopen discovery to allow for additional discovery in accordance with such a Fourth Circuit interlocutory order applying the NWPR definition. See Signature Pharmacy, Inc. v. Soares, 2012 WL 4815726, at *2 (M.D. Fla. Oct. 10, 2012) (noting the court's previous decision to grant the plaintiff's motion to reopen discovery following the resolution of interlocutory appeal). In short, defendants have presented no evidence that jurisdiction would be completely and legally lacking; only that defendants would be at a tactical advantage after a Fourth Circuit ruling in favor of the NWPR definition. Therefore, the first prong for certification is not met because there is no completely dispositive controlling question of law.

---

continue before the court regardless of what the appellate court decided, the court cannot see how certifying this question for interlocutory appeal would materially advance this litigation towards a more efficient and expedient conclusion.").

### 2. Substantial Ground for Difference of Opinion

The court likewise finds that the second prong for certification—substantial ground for difference of opinion—is not satisfied. "[C]ourts have traditionally found that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." Hencely v. Fluor Corp., 2020 WL 5269795, at *4 (D.S.C. Sept. 4, 2020). However, "[c]ertification under § 1292 is not intended to provide early review of difficult rulings in hard cases" and "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Michelin, 2013 WL 5946109, at *5.

Defendants' argument regarding this prong largely relies on the assertion that "there is no controlling authority in the Fourth Circuit on the question of whether the 2020 rule applies" and that "this case presents an issue of first impression in this Circuit." ECF No. 184 at 5–6. Yet defendants' argument runs directly contrary to caselaw indicating that the mere existence of a question of first impression is an insufficient basis for interlocutory appeal. Moreover, as defendants acknowledge, there is no dispute among the circuits on the question of whether the 2020 NWPR definition applies. Instead, as the court explained in the July Order, the Ninth Circuit and Western District of New York both reached the conclusion that the NWPR does not suggest retroactive application. See United States v. Lucero, 989 F.3d 1088, 1104–05 (9th Cir. 2021) ("Nothing in the text of the [NWPR] regulation suggests retroactive application. To the contrary, it states that the new limits on what constitutes jurisdictional waters would

'replace[] the recodified pre-2015 regulations, upon its effective date' and that determinations made under prior versions of the regulation would be preserved." (citations omitted)); United States v. Acquest Transit LLC, 2021 WL 809984, at *11–12 (W.D.N.Y. Mar. 3, 2021) ("Since [the NWPR] is creating new regulation and not construing what already exist[ed] by clarifying existing law, it cannot be applied retroactively.").[3] Although defendants correctly maintain that both courts applied different tests for retroactivity, their respective decisions finding against retroactivity speaks volumes, and importantly, indicate that no circuit split exists.

Defendants also miscast the July Order as one exclusively concerning the 1986 Regulations' definition versus the NWPR definition. While that was the ultimate legal question to be decided, the court's July Order focused on the Fourth Circuit's retroactivity precedent as well. As the court explained in that order, defendants' arguments could not withstand "the clear import of the law." ECF No. 183 at 19. Specifically, the court found that application of the NWPR is barred because the regulation does not overcome the presumption against retroactivity under the Fourth Circuit's three-part test. Similarly, the Fourth Circuit law is clear that the NWPR was not a mere clarification of the 1986 Regulation. Although defendants observe that courts in other circuits apply differing standards to determine whether a rule constitutes a clarifying rule, they have failed to prove that what constitutes clarification is contested within the Fourth Circuit. Certainly, certification does not hinge on defendants' ability to relitigate the issue in their motion—indeed, such arguments are disfavored—but

---

[3] The court has not identified any subsequent cases since the July Order that have weighed in on the issue of retroactivity.

defendants' failure to raise new issues or contrary authority is telling. See Tool Shed, Inc. v. Mattoon Rural King Supply, Inc., 2017 WL 6729635, at *1 (D.S.C. Nov. 16, 2017) (noting that a motion that "raises no new issues that alter the court's original findings" fails § 1292(b)'s test).

Of course, the court cannot predict that the Fourth Circuit would agree with this court's application of the three-part test or would follow the approach adopted by the two other federal courts to have analyzed similar issues. But appellate courts "cannot be expected to review piecemeal issues through the course of a case's progress through the trial court, even if those issues are important to the parties." Profit Point Tax Techs., Inc. v. DPAD Grp., LLP, 2021 WL 1967961, at *3 (W.D. Pa. May 17, 2021). Since defendants have presented no reason to find that this is a more novel or difficult question beyond the court's purview, the court declines to find that it demands interlocutory appeal.

### 3. Material Advancement of the Ultimate Termination of Litigation

Finally, the court briefly considers whether an immediate appeal of the July Order would materially advance the ultimate termination of the litigation. Defendants first argue that "[b]y certifying this issue for appeal now, the Court will avoid the risk of requiring two trials," referring to the need for a new trial if the Fourth Circuit rules that the NWPR definition applies on post-trial appeal. ECF No. 184 at 7. Such an argument is unavailing. "The potential for avoiding court costs in the event of later appellate reversal is true of nearly every district court order, and the 'mere fact' that an interlocutory appeal 'at this time may save pre-trial and trial effort and expense is not

determinative; that of course can be said of any interlocutory appeal.'" Michelin, 2013 WL 5946109, at *5 (citing Fannin, 873 F.2d at 1438).

Indeed, defendants' argument contemplates that any Fourth Circuit ruling, whether interlocutory or post-trial, would simply lead to a "new trial" rather than spell the end of litigation. As the court previously discussed, even if the ability for the case to be resolved on the merits were not a relevant consideration under the first prong of § 1292(b), it is certainly a relevant consideration here. See supra n.2; Reynolds v. Wyndham Vacation Resorts, Inc., 2016 WL 2347428, at *2 (D.S.C. May 4, 2016) (observing that the case "would not have ended" if the court ruled in the moving party's favor on the disputed question). But moving past the dispositive nature of this issue again, interlocutory appeal would only elongate this litigation. As defendants note, discovery in this case has concluded, and based on the parties' briefs, at least a portion of the discovery—if not all of the government's discovery—has been tailored toward the 1986 Regulations' definitions. Any potential Fourth Circuit ruling applying the NWPR definitions would, in the interests of justice, likely necessitate a reopening of discovery. See Signature Pharmacy, 2012 WL 4815726, at *2.

Finally, defendants mention that the agencies recently announced plans to begin "a new rulemaking process" to redefine "waters of the United States" under the 1986 Regulations. ECF No. 184 at 7. That rulemaking process comes on the heels of the ruling by a District of Arizona court discussed earlier. While defendants acknowledge that the NWPR definition is being reworked, they argue that the NWPR definition is still operative in South Carolina and that "[i]f history is any guide, the rulemaking process for a new definition will take considerable time." Id. at 8. The court observes, first, that the

13

agencies appear to be further along than defendants represent, with a revised definition already near the end of the public comment phase. See Revised Definition of "Waters of the United States," 86 Fed. Reg. 69372 (noting public comments are due February 7, 2022). Second, the court notes that if anything, the uncertainty surrounding the future of the NWPR definition weighs against defendants. An interlocutory appeal would lead to protracted litigation on not only whether new legislation may be retroactively applied but what regulation is supposed to be retroactively applied. The court recognizes that the District of South Carolina has remanded the NWPR without vacatur. See Regan, No. 2:20-cv-01687-BHH (ECF No. 147). Since the court must exercise judicial restraint, and it need not issue judgment on the effect of that ruling on this case, it observes that it is likely the government will dispute the validity of the NWPR definition even if retroactivity is permitted. Ultimately, this court's approach of adopting the prospective effect of the 1986 Regulations—an approach that the court finds is supported—is also the most economical given the status of the operative WOTUS definition. Any post-trial appeal, if necessary, would be a step closer to the agencies' resolution of the definition in effect today. Therefore, the court finds that none of the three prerequisites for certification of the definitional question are met and denies the motion for interlocutory appeal.

### B. Motion to Clarify Scope of Rule 26(a)(3) Disclosures

Separately, on November 23, 2020, the court entered an order granting defendants' motion to compel and denying defendants' motion to bifurcate (the "November 2020 Order"). ECF No. 127. Defendants had previously sought to bifurcate this action into two phases. ECF No. 64. In the first phase, a jury would determine

whether defendants violated the CWA. In the second, if necessary, the court would determine the appropriate penalties for the violations. The court denied the motion, holding that, as a practical matter, the trial portion of the CWA action would already be bifurcated. Therefore, defendants' motion was effectively one to bifurcate discovery because "the sole practical consequence of bifurcation in this case would be that defendants need not respond to discovery requests about their financial condition until after a jury determines defendants' liability." ECF No. 127 at 5.

The court dismissed this concern, noting the risk that defendants would be compelled to produce records "that may not be used in the event that a jury determines that defendants are not liable" was, at most, minimally prejudicial. Id. at 6; see also id. at 8 ("To be sure, defendants might produce records that go unused if the jury finds that they are not liable under the Clean Water Act. But producing financial records that may or may not be used at trial is not unfairly prejudicial."). In short, the court determined that there was no need for bifurcated discovery.

Now, defendants seek the court's clarification on an additional matter pertaining to bifurcation. In their motion to extend deadlines[4] and clarify the scope of Rule 26(a)(3) disclosures, defendants "respectfully request that the Court provide clarity to the parties as to the scope of the Rule 26(a)(3) disclosures that are due at this stage of the proceedings. In this regard, [defendants] believe that the Rule 26(a)(3) disclosures should be limited only to the liability jury trial at this point . . . ." ECF No. 195 ¶ 4. The

---

[4] The court previously granted, ECF No. 202, the parties' consent motion for extension of time to file Rule 26(a)(3) pretrial disclosures, ECF No. 201, and therefore, this portion of the motion has been resolved.

government takes the position that disclosures for both the liability and remedy phases are due at the deadline.

The court finds it likely that the issue has been resolved amicably. In the parties' consent amended scheduling order, the parties "agreed to identify, for each witness and exhibit disclosed, <u>whether such testimony or evidence will be offered for purposes of liability, remedy, or both</u>." ECF No. 201-1 ¶ 1 (emphasis added). To the extent it remains necessary, the court clarifies that the order was intended to apply to the Rule 26(a)(3) disclosures as well. As stated in the November 2020 Order, given the nature of any CWA action, a trial must take place in two phases, with the remedy phase contingent upon the liability phase. Thus, it may have been reasonable for defendants to believe that the court would permit the Rule 26(a)(3) disclosures to be submitted separately. However, to allow this would be akin to bifurcating the trial into two separate trials. The same factors that guided the court's ruling on discovery—namely, "the central concerns of convenience and efficiency"—govern the sensibility of unified Rule 26(a)(3) disclosures. ECF No. 127 at 6; see <u>Dodgeland of Columbia, Inc. v. Federated Mut. Ins. Co.</u>, 2009 WL 10710815, at *2 (D.S.C. July 15, 2009) ("Even if the issues are separable for purposes of the Seventh Amendment, a court will likely decline to bifurcate if there will be a significant overlap of evidence at the two trials which would make separation inefficient and inexpedient."). It seems likely the parties have reached the same conclusion, and in any case, the court finds that the motion is mooted by the amended scheduling order.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion for certification of interlocutory appeal and **FINDS AS MOOT** the motion to clarify in accordance with this order.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 19, 2022**
**Charleston, South Carolina**